## Cordie, Whitehead, Administratrix, Appellee, v. Springfield Light, Heat & Power Company, Appellant.

1. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside on review as against the evidence unless clearly and manifestly against its weight.

2. TRIAL—*when improper remarks will not reverse.* Remarks of counsel which tend to arouse the prejudice and sympathies of the jury which call attention to the poverty of the next of kin and suggest that the amount of damages might be predicated upon considerations other than that of the pecuniary loss, though grossly improper, will not reverse where the right of recovery under the evidence is clear and the prejudicial effect of such remarks was neutralized by prompt and emphatic instructions of the court.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1910. Affirmed. Opinion filed May 26, 1911. *Certiorari* denied by Supreme Court (making opinion final).

WILSON, WARREN & CHILD, for appellant.

DRENNAN & LAWLER, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case for the recovery of damages for the death of George Whitehead, which occurred on December 9, 1909, while he was working in the power plant of the defendant at Springfield, Illinois. Judgment was rendered in favor of the plaintiff for $6,000.

The declaration alleges in substance, that on the day in question, the defendant was erecting and constructing and placing in the engine room at its power plant, certain coal bunkers; that the coal then and there being used to keep up and maintain the fire in the furnaces under the boilers was thrown through the windows of the engine room into said bunkers; that the defendant negligently failed to use reasonable

care to furnish plaintiff's intestate a reasonably safe place in which to perform his work; that it negligently placed one of said coal bunkers temporarily upon wooden blocks which were wet and slick and laid one upon the other, without being cribbed or otherwise placed in such position that they would only slip and fall, and negligently failed to in any way fasten the top of said coal bunker to the walls of the engine room to prevent it from tipping forward and falling; and negligently cause coal to be thrown into said bunker while it was in the position aforesaid. That while the deceased was shoveling coal from said bunker into the hopper of one of the furnaces, said bunker by reason of being so temporarily set upon wooden blocks which were wet, slick, and laid one upon the other, and not being cribbed or otherwise placed in position so that they would not slip or fall, and by reason of said coal bunker not being fastened to the top or wall of the engine room, and by reason of causing coal to be thrown therein while it was in said position, said coal bunker tipped forward and fell and struck the deceased, and killed him. The declaration further alleges that the dangerous and unsafe conditions aforesaid were known to the defendant, or by the exercise of due care would have been known to it, and that the same were unknown to the deceased and would not have been known to him by the exercise of due care on his part; and further, that the deceased was at the time he met with his death, in the exercise of ordinary care for his own safety.

The evidence tends to show that Whitehead was employed by the defendant as a coal shoveler in its boiler room; that on the day in question the defendant was installing sheet iron coal bunkers in its engine room, consisting of three sides and a top, the fourth side being left open so that coal could be shoveled into them from cars on the outside of the building, and then taken from under the bottom by shovelers. Two of the bunkers had been erected, and a third had been

put in place during the afternoon. It was necessary to attach the upper edge thereof to one side of the building, and for that purpose it had been raised from the floor about two feet, by putting blocks under the corners. The workmen were engaged in preparing hinges with which to attach the bunker to the side of the building so that the blocks could be removed. In the meantime coal was being shoveled into the bunker from the outside, and taken from underneath on the inside by the shovelers and then shoveled into the grates. While Whitehead was so engaged, the bunker fell and so injured him that he died instantly.

It is first urged by the defendant that the preponderance of the evidence shows that reasonable care and caution was used by it to provide a safe place for the deceased to work. We are satisfied from an examination of the record, that the jury were warranted in finding the contrary. The evidence is ample to warrant the conclusion that the fall of the bunker which injured the deceased was caused by a failure to properly crib or otherwise secure the blocks under the bunker. It is also contended that the evidence shows conclusively that whatever danger existed was obvious to the deceased. One Webster testified that within five minutes prior to the time the bunker fell, he notified Whitehead that the bunker had moved some little distance from the wall at the upper edge and was liable to fall at any time, and that Whitehead in reply said, "Let it fall, he didn't care." If the testimony of Webster was true, there would be much force in the contention of the defendant. It was, however, uncorroborated, and there were inconsistencies therein which fairly tended to discredit it. The jury, who were the sole judges of his credibility and of the weight to be given to his testimony, obviously did not believe the same, and we are therefore unable to say that the evidence clearly discloses that the deceased had actual knowledge of the danger. Neither can it be said that the deceased was chargeable with knowledge of the

situation from observation. He was not required to make a careful and critical examination of his surroundings, and had a right to assume and to rely upon the assumption that the defendant had fully performed its duty and exercised reasonable care to furnish him with a reasonably safe place in which to work. There is testimony tending to show that the bunkers were of novel construction, and that his attention was occupied with the work which he was performing. This question, too, was one for the jury, and we cannot say that their verdict was unwarranted.

It is complained that one of counsel for the plaintiff in his closing argument to the jury, used the following language: "If Webster's statement was false, then Webster is worse than a highway robber; he would filch from this widow and these orphan children their support and education," and the further statement that "these children are turned out upon the cold charities of a merciless world, and it is for you to say how much they shall have." The record discloses that upon objection being interposed by counsel for the defendant, the court promptly sustained the same, and told the jury that they should not be influenced by such remarks; that they had no place in the case; that if there was any right to recover, the amount of the damages should be based wholly upon the pecuniary loss, and that whether the next of kin were rich or poor was immaterial. The statements in question were grossly improper. They not only tended to unduly arouse the sympathy and prejudice of the jury, but called attention to the alleged poverty of the next of kin, which fact was immaterial in the case, and not proper to be considered by the jury in the assessment of damages. We are of opinion, however, that their harmful effect was fully neutralized by the prompt and emphatic instructions of the court. If the right of recovery was less clear under the evidence, we would feel impelled to consider the error assigned

as prejudicial, but believe that in the present case the verdict was not affected thereby.

There is no error in the rulings of the court upon the evidence or instructions, and the damages awarded are not excessive. The judgment of the Circuit Court is therefore affirmed.

*Affirmed.*